

May 8, 2025

Jim Longley
Boston, MA

Dear Jim:

On behalf of OpenEvidence Inc. (hereinafter the "Company"), I am pleased to offer you the position of SVP, Commercial, at OpenEvidence. The purpose of this letter is to summarize the terms of your position with the Company, should you accept the offer:

- Your role with the company will become effective on May 8th 2025. Your role will be dynamic and your responsibilities might evolve over time. These include but are not limited to 1) sales and driving top-line revenue for the firm from pharmaceutical advertising 2) interfacing with media agency executives, pharmaceutical brand managers and media planners, agency media planners, and other key stakeholders to generate and manage incremental media spend on OpenEvidence 3) coverage on both the client and agency side of pharmaceutical advertisers in a business development role. Your success will be measured by top-line revenue generated.
- In consideration, the Company will pay you a) a base salary of  $0 a year in base cash plus health and other benefits (for avoidance of doubt, health insurance premiums and health and other benefits including 401K, PTO/DTO are covered by and/or supplemented by the Company, not deducted from the base salary), plus $2,200,000[1] a year (gross value/face value) in stock options; the number of shares granted will be determined based on the prevailing price per share in the year issued, which is calculated on the basis of the most recent price per share paid by an independent, arms-length investor, with strike price set by 409a.  Shares vest monthly in year one of employment at $183,333[2] (gross value/face value) per month.

**2025 Plan = $30M in sales**

- 2025 Bookings (at plan) = $465,000 commissions, paid monthly.  Commission paid monthly on all deals closed prior month. In year one, $38,750 will be paid monthly for the first 6 months as a draw starting May 2025.  Commission is earned on dollar one of every deal at 1.55%  ($465,000/$30,000,000)
- and b) for every 10% or $3M in bookings over the 2025 Bookings Goal an additional $80,000[3] worth of ISOs will be granted (using same formula as above) in the following fiscal year capped at 200% to goal; An additional $56,000[4] of ISOs (using same formula as above) can be earned per milestone below by accomplishing the following in the defined time frame below:
    - CMI = $15M by December 31, 2025
    - Initiative = $11M by December 31, 2025
    - Klick = $5M by December 31st, 2025
    - PHM/Starcom/CoLab = $11M by December 31st, 2025
    - Data Deals/Partnerships = $8M by December 31st, 2025
    - Any one pharma account at $18M+ one year calendar spend by December 31st, 2026 (only paid on first one to $18M).

---

[1] To clarify, due to IRS 409A rules, the *net* annual value of your stock option grant is less than the gross value/face value of your grant, and is calculated as the difference between:

• The most recent share price paid by an independent investor (the prevailing price), and

• The applicable 409A strike price set according to IRS rules, at which you may exercise your options.

[2] Ibid

[3] Ibid

[4] Ibid

- If total bookings = $45M by December 31st, 2025, an additional $3.2M of ISOs will be granted (using the same formula as above).

For clause b only, additional equity above is dependent on exceeding $30M or one of these milestones above. As elsewhere, the number of shares granted will be determined based on the prevailing price per share in the year issued, which is calculated on the basis of the most recent price per share paid by an independent, arms-length investor, with strike price set by 409a in each year in which you come in Above Plan (2025= $30M and/or above the defined individual milestones outlined for 2025)

- c) eligibility for TBD additional performance-based bonuses for truly outlier sales performance in any given year.
- The stock options are subject to the terms of the Company's equity plan and the Company's form of stock option agreement. The Option will be an incentive stock option to the extent permissible under Section 422 of the Internal Revenue Code and have an exercise price equal to the fair market value of the stock on the date of the grant, as determined by the Board.  The vesting of these options shall be monthly from date of issue, over one year, with no cliff. (For example, $2,200,000 starts vesting day 1 of the fiscal year, 1/12 or $183.33K vests on the first day of every month of that fiscal year).
- Company will buy back from you up to 25% of your total outstanding stock holdings in each full year while you are still employed at the company, at the most recent price per share paid by an independent, arms-length investor. You agree to execute the Company's Stock Option Grant Notice to finalize the parties' agreement as to the Option.  You acknowledge that this Option will be subject to the terms of the Company's Equity Incentive Plan (the "**Plan**").  Upon exercise, you acknowledge that you will be required to execute certain customary agreements entered into with the holders of Stock of the Company such as a right of first refusal and co-sale agreement and a voting agreement.
    - You represent that you are not bound by any employment contract, restrictive covenant, non-compete, or other restriction preventing (or that purports to prevent) you from entering into employment with or carrying out your responsibilities for the Company, or which is in any way inconsistent with the terms of this letter. You represent that you have not signed a non-compete with your previous employer and that you have no currently active non-compete with any employer. You represent that you can think of no reasonable legal basis upon which your previous employer might claim a breach or other form of valid claim against you or this Company in relation to you joining this Company or working for this Company in this role.
    - In the event that any legal action legally delays the agreed upon start date, OpenEvidence will cover any legal fees and compensate Jim Longley at his full on target earnings equal to the previously stated base salary, commissions, and equity
    - This letter shall not be construed as an agreement, either expressed or implied, to employ you for any stated term, and shall in no way alter the Company's policy of employment at will, under which both you and the Company remain free to terminate the employment relationship, with or without cause, at any time, with or without notice. Although your duties, title, cash compensation, as well as the Company's policies and procedures, may change from time to time, the "at-will" nature of your employment may only be changed by a written agreement signed by you and the Founder of the Company, which expressly states the intention to modify the at-will nature of your employment.  Similarly, nothing in this letter shall be construed as an agreement, either express or implied, to pay you any compensation or grant you any benefit beyond the end of your employment with the Company.

This offer letter is your formal offer with the Company and supersedes any and all prior or contemporaneous agreements, discussions and understandings, whether written or oral, relating to the subject matter of this letter or your employment with the Company. The resolution of any disputes under this letter will be governed by the laws of Delaware and shall be settled by private arbitration.

If you agree with the provisions of this letter, please sign the letter in the space provided.

OpenEvidence Inc.


By: _____

Name: Daniel Nadler

Title: Founder & Chairman


The foregoing correctly sets forth the terms of my relationship with the Company

_____            Date: 5/8/25 _____

Name: Jim Longley