JAMS
EMPLOYMENT ARBITRATION RULES & PROCEDURES

|  |  |  |
|---|---|---|
| JAMES LONGLEY, | ) ) ) | |
| Claimant, | ) ) | |
| v. | ) ) | Case Number: |
| OPENEVIDENCE, INC., | ) ) ) | |
| Respondent. | ) ) ) | |

**DEMAND FOR ARBITRATION AND STATEMENT OF CLAIM**

**Introduction**

1.      Claimant James Longley brings this demand for arbitration against his former employer OpenEvidence, Inc. ("OpenEvidence" or the "Company") for violation of the Massachusetts Wage Act, G. L. c. 149, §§ 148, 148A & 150.

**Parties**

2.      Mr. Longley is an individual with a residential address at 14 Boardman Lane in Hamilton, Massachusetts.  Mr. Longley resided at this Massachusetts address, which was his principal office location, for the entire duration of his employment with OpenEvidence.

3.      OpenEvidence is a corporation organized under the laws of Delaware with its principal place of business at 215 NW 24th Street, 3rd Floor, Miami, Florida.

**The Arbitration Provision and Applicable Law**

4.      The Company issued to Mr. Longley an Offer Letter, dated May 8, 2025, a copy of which is filed herewith.

5.      The Offer Letter sets forth the terms and conditions of Mr. Longley's employment

1

with the Company, including those concerning his compensation.

6.      The Offer Letter contains the following provision: "The Resolution of any disputes under this letter will be governed by the laws of Delaware and shall be settled by private arbitration."

7.      Even though the arbitration provision provides that the Offer Letter is governed by Delaware law, given that Mr. Longley resided in Massachusetts, and that his home in Massachusetts was his principal office location, for the entire duration of his employment with OpenEvidence, the Massachusetts Wage Act applies to Mr. Longley's claim herein. *See, e.g., Melia v. Zenhire, Inc.*, 462 Mass. 164, 165, 170, 173-74 (2012) ("The Wage Act proscribes 'special contracts' that exempt employers from its provisions. … A forum selection clause that, in operation, would deprive an employee of substantive rights guaranteed by the Wage Act violates public policy and is unenforceable.").

### Facts

8.      Mr. Longley worked for OpenEvidence from May 8, 2025 to March 7, 2026 in a senior sales role, when he was abruptly fired.

9.      Approximately one week after the Company terminated Mr. Longley's employment, it asserted for the first time that it had let him go for "Cause," within the meaning of its 2022 Stock Option and Grant Plan. In fact, the Company did not have Cause to let him go.  The real reason the Company ended Mr. Longley's employment is that it did not consider its return on investment (ROI) in Mr. Longley to be sufficient to support his continued employment.

10.      Based on its false assertion that it had Cause to fire Mr. Longley, the Company canceled all of the stock options he had earned.

11.      Mr. Longley intends to bring a separate demand for arbitration against the Company

for reinstatement of the improperly canceled stock options.  The arbitration provision applicable to that demand, set forth in the Incentive Stock Option Agreement Under The OpenEvidence Inc. 2022 Stock Option and Grant Plan, provides for arbitration in Delaware.

12.     During the entire course of his employment, the Company paid Mr. Longley a commission at the end of each month.

13.     According to his Offer Letter, the commissions were to be paid to him "monthly on all deals closed prior month" and "earned on dollar one of every deal at 1.55% ...."

14.     This is exactly how OpenEvidence calculated and paid commissions to Mr. Longley each month during his employment with the Company.  As the Offer Letter required, he was paid at the end of each month, and his commission was calculated as 1.55% of the revenue from all deals closed during the prior month.  These commissions, pursuant to the terms of the Offer Letter, were definitely determined and due and payable at the end of each month.  The Offer Letter does not provide for any contingencies or exceptions.

15.     Despite this contractual obligation, the Company failed to make a commission payment to him on March 31, 2026, for deals closed in February 2026, claiming that it was conducting an "audit."

16.      Notwithstanding the claimed audit, other sales professionals were paid on time.

17.     The purported justification for failing to make timely payment, an audit – even if true -  is legally deficient. The Offer Letter does not include any exceptions or contingencies with respect to the monthly payment deadline. And the Wage Act does not permit employers to defer payment of earned wages for administrative convenience or internal review. Allowing audit delays would effectively permit employers to manufacture indefinite deferrals of wage obligations, which would violate the Wage Act's strict time-defined requirements.

18.     After legal counsel for Mr. Longley sent a letter to the Company, dated April 3, 2026, the Company made two commission payments to him. The first installment, $349,987.43, was paid on April 22, 2026. The second installment, $193,750, was paid on April 27, 2026. Both payments, totaling $543,737.43 were due on March 31, 2026, and therefore were late.

19.     Further, on information and belief, the Company improperly withheld alleged prior overpayments from these commissions. It has not identified any such alleged overpayments, or given Mr. Longley any opportunity to challenge them.

20.     In addition, the Company failed to pay any commission to Mr. Longley for sales closed between March 1 and March 7 (his last day of employment).

### Count for Violation of the Massachusetts Wage Act

21.     The allegations of the preceding paragraphs are incorporated herein by reference.

22.     The Wage Act mandates that wages, including commissions that constitute wages, are paid on time.

23.     Commissions constitute wages under the Wage Act when they are "definitely determined" and "due and payable."

24.     A court will look to the contract containing the terms of the employee's compensation to determine whether the commission is "definitely determined" and "due and payable." Here, the Offer Letter constitutes that contract.

25.     The commissions totaling $543,737.43 were definitely determined and due and payable under the Offer Letter on March 31, 2026, but were not paid until April 2026, after Mr. Longley's counsel sent a letter to OpenEvidence demanding payment.

26.     Furthermore, in the event the Company reduced the amount of commissions payable to Mr. Longley by deducting any prior alleged overpayments, the Wage Act prohibits such

conduct. To constitute a "valid set off" permitted by the Act, a deduction must meet a three-part test: (1) it must be clearly established that the employee owes a debt or obligation to the employer, (2) the amount of the debt or obligation must be clearly established, and (3) there must be procedural due process. Whatever OpenEvidence deducted – which it has not disclosed – does not meet this test.

27.     In addition, as noted above, the Company failed to pay any commission to Mr. Longley for sales closed between March 1 and March 7.  This unpaid commission was due on April 30, 2026, and therefore the Company violated the Wage Act by failing to pay it by that date.

28.     The Massachusetts Wage Act mandates, when an employer has failed to pay a wage on time, that the employer owes the aggrieved employee treble the amount of the late wages, plus the attorneys' fees he incurs in enforcing his rights under the statute.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Longley respectfully requests that the Arbitrator:

(a)     award Mr. Longley damages equal to (1) $1,087,475 (which is two times the amount of the commissions paid in April, 2026), plus (2) three times any amounts that were withheld from commissions owed to him as alleged offsets, plus (3) three times any unpaid commission owed to him for the period from March 1-7, 2026.

(b)     award Mr. Longley the attorneys' fees he incurs in connection with this arbitration;

(c)     award Mr. Longley the costs and expenses he incurs in connection with this arbitration;

(d)     award Mr. Longley interest at the statutory rate; and

(e)     grant Mr. Longley such further relief as the Arbitrator deems just and equitable.

5

JAMES LONGLEY

By his attorneys,

_____
Frank N. Gaeta (BBO No. 561388)
  fgaeta@richmaylaw.com
RICH MAY, P.C.
176 Federal Street
Boston, MA  02110
(617) 556-3800

Dated:  June 2, 2026